United States v. McDowell. Mr. Waters, whenever you're ready. Good morning, and may it please the court. My name is Robert Waters from the Office of the Federal Public Defender for the Eastern District of North Carolina. I represent the appellant, Ernest James McDowell, Jr. Mr. McDowell appeals the sentencing of the district court imposing upon him the enhanced sentence as an armed career criminal, relying solely for the necessary third predicate conviction on a 40-year-old National Criminal Information Center criminal record sheet as to one conviction. Mr. McDowell argues primarily that in general an NCIC criminal record sheet standing alone lacks the reliability necessary to support the finding of a third predicate ACCA conviction over a defendant's objection, and also that in this particular instance the NCIC record sheet in this case contained obvious factual inaccuracies upon the face of the record and that supporting evidence with sufficient indicia of reliability was not produced to refute those inaccuracies. I would note that Mr. McDowell also raised in his briefs the argument that the district court improperly raised the statutory minimum and maximum sentences based on facts not pled in the agreement or proved beyond a reasonable doubt. With the court's permission, I don't intend to take that issue up at argument here and intend solely to focus on the issue of the use of the NCIC record. I didn't see any in your brief, and I wondered if you've gotten any statistical information and literature about the accuracy of the NCIC record. Not in general, Your Honor. There is one case. I take that as your first argument, that in general they're inaccurate, and in particular it's inaccurate here. Isn't that your sort of two-point argument? Yes, Your Honor, generally. There is a case out of the Eighth Circuit. It was, I believe, the U.S. v. Urbina Meja case, 450 F. 3rd, 838, in which the probation officer sort of anecdotally raised the proposition that he'd worked on some 200 pre-sentence reports, and out of those 200, he noted that one that he knew of had an error based on the NCIC record being inaccurate. Well, our standard here is preponderance of the evidence until the Supreme Court changes it, right? Yes, Your Honor. So that doesn't look to me like a basis upon which to make an argument that there wasn't – that we can find that the district court clearly errored in finding the preponderance of the evidence that it was okay to rely on this NCIC report. Well, two points to that, Your Honor. One is to note that a one out of 200, a one-half of one percent error rate would seem in general to be relatively accurate, but when you look upon the size of the NCIC as a whole and the number of transactions that are run, the Supreme Court noted in a 1979 case that at that point, in 1979, there were 7.2 million records in the NCIC, and they averaged 280,000 requests per day. According to the FBI website, and the FBI is the agency that administers the National Criminal Information Center, as of fiscal year 2011, there were almost 12 million records, 11.7 million, in the NCIC's 21 databases, and they'd gone to averaging over 7.2 million requests per day. But I think this argument goes to records can be wrong, but that would be – NCIC report would be any kind of report. I mean, I don't know that that – how far that gets you here. In part, Your Honor, I would look to the Bryant case out of the First Circuit to sort of look at the difference. In Bryant, the issue was the appellant challenged two predicate offenses for the career offender enhancement. He raised initially the argument that only a Shepard document, a certified court judgment or equivalent, should be used as the standard to prove the existence of a prior conviction. The First Circuit rejected that argument, as did this court in the first appeal in this case. Well, you all stipulated that these records were destroyed, the court records. The government, I believe, stated that the original court records, yes, were destroyed. Here in the New York court don't exist. They've been destroyed back, what, 1971 or something, when this offense occurred. At some point, but after 1971. The records no longer exist. The only record that they produced is this NCIC report. Yes, Your Honor. And it has the name Michael McDowell on it, doesn't it? No. Didn't it have a wrong name? Yes, Your Honor. Your view, it had a wrong name. It had Michael McDowell, and there was issues about the date of birth. Yes, Your Honor. The NCIC record begins on page 97 of the joint appendix. There are four names listed on it. None of them are defendant's actual name. There are four birthdates on it. Three of those birthdates are incorrect, and I would note that. But one of them is his birthdate? One of them does appear to be his birthdate, September 19th, 1950. But you don't quarrel with the fact that the defendant supplies the information? The defendant supplies some of the information that goes into an NCIC record. I don't think you can glean somebody's birthdate by looking at them. Except, Your Honor, that it's not directly input necessarily from defendant's own statements. Again, would point to the Supreme Court case in Baker v. McCollum. There, an appellant was, Mr. Lenel McCollum, was arrested when he was stopped at a traffic stop by local law enforcement. They ran his driver's license and license plate of his car through the computerized criminal database, found an outstanding arrest warrant, and they arrested him. Well, it turned out that Leonard McCollum, his brother, had obtained a duplicate driver's license in Lenel's name and had committed an illegal act under his brother's name, and it went under his brother's criminal record. Point being that input into the NCIC is based on a huge number of inputs. Federal, state, and local law enforcement. And mistakes were made. And mistakes were made. Mistakes were made. But other than the base of the NCIC report, the government sought to tie it in to your guy. They said there was something about Iron Mike being a nickname. Correct? Yes, Your Honor. And what other evidence was there in the context of this case to prove that this is your guy that had this 1971 conviction other than the NCIC report? As to this specific conviction, there was no other documentary evidence. No other documentary? Did they put any evidence? I mean, put any witnesses? I believe the government will argue that the probation officer at the second sentencing hearing stated that he spoke to an FBI agent who told him that the NCIC record was matched to this particular defendant using fingerprint records. Okay. And you don't argue with that, or you do? You say it's insufficient? We argue that it's insufficient, Your Honor. But the judge found that it was sufficient. Do you agree with that? Yes, Your Honor. The judge found, made a finding, that this is the same guy. Yes, Your Honor. And we review that, as Judge Mott said, for clear error. For clear error, yes, Your Honor. And they had to show it by preponderance of the evidence. Yes, Your Honor. Our argument would be that, firstly, the FBI agent didn't testify directly. It was hearsay. It was all hearsay, and the probation officer didn't get on the witness stand. And the probation officer didn't get on the witness stand. He's an officer of the court of some kind. He's an officer of the court, Your Honor, and we're not stating that he in any way meant to mislead the court. Right. But just pointing out that, first, in general. He stood up and said, I've talked to an FBI agent over the phone, and he said this, he said something about fingerprints. But he didn't say he was the fingerprint guy. But he said that the fingerprint shows this is the same person. That's our point. Something like that. Something like that. That's our point, Your Honor. And the judge thought that was enough. Well, there was one other thing I thought. Didn't he have a conviction like ten years ago, and he hadn't made this argument there? He hadn't made the argument that this 20-year-old conviction, that it wasn't him. He hadn't claimed that that wasn't part of his criminal history. Yes, Your Honor. To clarify, the 1971 conviction that served as the third predicate for ACCA was in Bronx County, New York. It was preceded by two other convictions in Bronx County, New York, under a different name. There was a 1983 conviction in the Eastern District of North Carolina, federally. Of this man. Of Ernest James McDowell. And that's the one where this came up. Your client, Ernest James McDowell. Ernest James McDowell. No, Your Honor. The government argued that it didn't come up. Didn't come up. So that's proved that it was him. He never made the argument that it wasn't him. Well, what incentive? Does he necessarily have an incentive to bring it up in 1983? Exactly, Your Honor. There's no record of any incentive. We actually don't have any documentary evidence. He wouldn't have increased his sentence at all? Not that I'm aware of, Your Honor. Other than possibly for just – it should have increased his criminal history point. That's what I thought. I don't know that it would have increased his criminal history category. 1983 is prior to the guidelines. It wouldn't have had anything to do with the guidelines because they didn't exist. So he wouldn't have had any guideline incentive to make a – We're just speculating. Exactly, Your Honor. We don't even – not only do we not have any documentary evidence of the 1971 conviction, we don't even have the PSR from the 1983 conviction in federal court. It's all just conjecture and assumptions. You don't think the 1983 case helps him any? I don't think so, Your Honor, in part because this court has also held that the failure to object to a PSR should not be taken as an admission of the facts contained within the PSR. I believe that was the Moffitt case. So, A, he didn't have any incentive to object. B, we don't have any record of what happened in 1983. And C, even if we assume he didn't object – The best evidence, then, sounds to me like is the FBI man, which is hearsay, but you don't claim that that's inadmissible. We don't claim that it's inadmissible, Your Honor. We're claiming that it's insufficiently reliable. And, again, pointing to the Bryant case. Insufficiently reliable because of the mode of presentation? Because you didn't attack the actual merits of the fingerprint analysis, right? Both because of the mode of presentation being hearsay, which is generally considered unreliable, and because of what was actually said. According to the probation officer, the statement that the FBI agent made to him, we believe is most fairly summed up as generally NCIC records use fingerprints. It doesn't say whether anyone – it certainly doesn't say whether that agent, but really doesn't say that anyone specifically checked Ernest James McDowell's fingerprint 10 card from this case to the fingerprint 10 card from Michael McDowell from 1971 and said these two people are the same people. This criminal conviction is fairly attributed to this person. And, again, pointing to the Bryant case, the First Circuit in Bryant didn't say it has to be a certified court judgment. It specifically said it doesn't have to be a certified court judgment. It doesn't have to be a Shepard document. It said that a certified court judgment is presumably reliable. And I think that goes to the difference between an NCIC record and what it's designed to do and what a certified court judgment is designed to do. A certified court judgment is a communication from one court to another court that specifically says this criminal defendant committed this offense and was convicted on this date. It's very focused. It's very specific. It's a scalpel as far as tools go. An NCIC record is an axe. It's a general purpose instrument. It uses information from federal, state, and local law enforcement agencies all over the country and even Canada. The Royal Canadian Mounted Police can input into NCIC into multiple databases, and it's used for law enforcement purposes to locate fugitives, to find missing persons, to locate stolen property. I would also note that according to the FBI and the NCIC website, it says that the purpose of the NCIC is to aid law enforcement and protect law enforcement officers. I would point out that if you're a law enforcement officer doing a stop on the side of the road and you run the NCIC record check to determine is this person a violent felon, in terms of officer safety, you're going to want that report to be over-inclusive if it airs at all, not under-inclusive. I believe I'm out of time unless there are any questions. Thank you very much. Thank you. Thank you. Ms. Maypark. Good morning, Maine Police and the Court. My name is Jennifer Maypark, and I represent the United States in this case. All the district court had to do here was decide if the NCIC and the other information before the court had a sufficient indication of reliability to support the probable accuracy. By doing that, the district court had the standard of preponderance of the evidence. We submit to this court that the district court properly found that the NCIC report as well as the information from the probation officer was sufficient for the court to find that it was the defendant. If not for the information that the probation officer submitted regarding fingerprint analysis, would you be making the same argument here today? I would make the same argument, but I would admit to the court that I probably wouldn't be on as strong a basis as I am standing before the court right now. The record just by itself, I don't know how that would be sufficient. Well, it depends on what the NCIC report shows. NCIC reports in general are based on a lot of information. Some of them are based on criminal records, based on fingerprints, but it could be based just on names and date of birth and things like that. In this case, what makes this report stand out and is reliable is the fact that it was based on the defendant's fingerprint analysis. But the showing of that is pretty thin, that it's based on his fingerprint analysis. The probation officer stood up and said, I talked to somebody at the FBI who said these NCI things are tied into fingerprints. Well, it wasn't as general as that. The AUSA, as she was discussing the case with the court, said, I will ask the probation officer to proffer to the court what he has learned. And so that call was made by the probation officer specifically for the purpose of reliability. Who was the FBI man? His name is mentioned in the joint appendix at page 65. And the probation officer said that I contacted the FBI in reference to the reliability of the NCIC. And a program analyst, starting from page 64 at the bottom, from the FBI called me back by the name of Keith Haywood. A program analyst? A program analyst. That's who runs the program. And all of the people who are in charge of the NCIC program, they're called program analysts by title. And he indicated that this was the defendant referenced in the NCIC, that it was based on fingerprint analysis as well as information received from the New York Department of Corrections and a New York State identification, the SID number. So that this was not a generalized statement by the probation officer, but it was a specific call made by him to the FBI aimed at the issue of reliability of this NCIC report. Looking at the NCIC report, because when this case first came before the court, there was no such report. And the court says, well, we need to see the report. I will point out a few things that I think are quite interesting and certainly lend to the fact that the district court here made the right decision. In the three arrests that the defendant had in the Bronx County in the 70s, it started in June 30th of 1970. He was convicted then of a misdemeanor. I'm looking at page 98 of the Joint Appendix. He used the name Michael McDowell in that case. Then was followed by an arrest on February 19th of 1971. Again, the use of the name Michael McDowell. And followed by the conviction in question here. Again, the use of the name Michael McDowell. You see some inconsistency only in the first. You see consistency, first of all, with him using the name Michael McDowell each time. McDowell is his last name. Michael is not his first name. But there's a connection that I will show the court there as well. The defendant in another part of the Joint Appendix indicates that he, in paragraph 38 of the PSR, tells the probation officer that he was born in Raleigh and the NCIC verifies that he was born in North Carolina, but that he moved to the Bronx County in New York at the age of 17, which puts him, his date of birth is he was born in 1950. It puts him in the Bronx County at the exact time that these convictions are reported on the NCIC so that it's not just, oh, it has the wrong name. There is certainly a connection between the defendant being in that place and the reports of the convictions in the NCIC. In addition to that, the defendant returned to New York in 2006, as shown in the Joint Appendix at page 100, and there he was convicted again. At that time, he used the name Ernest McDowell, which happens to be his given name. I will tell the court that... Not his name. I'm sorry? Michael McDowell is not his name? Michael McDowell, Michael is not his name. His official name is Ernest McDowell. All these records are under Michael. Well, the first three, but the one in... Iron Mike, right? Iron Mike was also a name that he used on the street. Does the record show Iron Mike, or is that just, that's the probation officer said he was? Yeah, that's information that came out at the sentencing hearing, I believe, it's the AUSA who told the court that he had used Iron Mike. But the tie between Ernest and Michael's names is strictly through the phone call to the FBI man saying we matched the used fingerprints? Partly, but I would make the case that in... Do you think more than that? Well, I'll make the case that in... I mean, you say he used the name Michael, it could have been a Michael that they arrested. It might have been some other McDowell. Well, that happens to be the name that he gave to his son. His son's name is Michael McDowell. Well, he gave his son a Michael McDowell. That's all right. Tell me about the Iron Mike. The prosecutor talked about it? Yes. And did the prosecutor say where he got this information? No, she did not say in the record where she got that information, just that when the defendant was being involved in undercover operations that he used the alias Iron Mike and that he was known on the streets as Iron Mike. That information made its way into the NCIC. It wouldn't have come from her. Is that in the PSR anywhere? Yes. The Iron Mike part? Yes. That's in the transcript, I think. It's at page 103 of the joint appendix in the PSR. So I'm sorry, I'm still a little bit at a loss. Okay. Where, yeah, aliases, identifiers, Iron Mike. Iron Mike. As one of them. Right. He also used the name James Griffin and Mike McDowell as opposed to Michael McDowell, and then Ernest J. McDowell, which is his given name. But I also wanted to make the point that when he returned to New York based on the NCIC in 2006 and was convicted there, he used the name Ernest McDowell, and he was arrested for possession of a controlled substance, which is a felony, which would have necessitated him being fingerprinted. So the idea that this is a 40-year-old record is not exactly true. This is a 40-year-old conviction. It's not a 40-year-old record. The fingerprints were to the Ernest McDowell, and they're more recent. That's your point, right? Yes. But the fingerprints were taken of the Ernest McDowell, who was arrested in 2006. Those fingerprints were fed into the same system, and that fingerprints match the fingerprint of the Michael McDowell from the early 70s. And so even though testimony to that effect, that's the inference that you draw from this brief statement made by the probation officer to the judge. Yes, and it is a reasonable inference because that's how fingerprints are matched. But there's no evidence that the probation officer didn't articulate it as well as you did. He just said the FBI man uses fingerprints. Well, the probation officer wasn't asked a question instead of being asked and probably wasn't in a position to make sure that it is articulated in this way. Nevertheless, he made a statement. He didn't get on the witness, and he stood up and spoke. Well, okay. He made a statement twice. He made the statement once when the USA proffered him to the court, but he reiterated that statement when the court asked a question about the defendant's birth date. And I'll point the court to pages 66 at the bottom of the joint appendix. Starting there, the court asked a question because there needed to be some clarification. And then the probation officer said this. The way the information in the NCIC is entered, it's when the arresting agent charges a defendant. Therefore, the defendant gives the arresting agent certain types of information, including the name or the date of birth. However, that's not the case with fingerprints. You can't fake fingerprints. Fingerprints are fingerprints. They are what they are. And that's the reason why this report is very reliable here, because we have the defendant's fingerprints, something he is unable to alter matching him to the Michael McDowell that was in Bronx County in the early 70s. And then the probation officer in the district court gives the defendant's lawyer, I think it's the defendant's lawyer, an opportunity to question the probation officer. Correct. And there was no evidence put forward at that point that the information given by the probation officer based on the fingerprints or anything else that had been said in the hearing thus far was unreliable. The defendant's counsel at that time simply said, I just don't think this is enough, said something about fingerprints are being called into question at this point. Do you think this evidence would establish the prior conviction beyond a reasonable doubt? I think that it probably, you would probably need more. I think the standard here is what really works for us. Yes, I understand that. Of course, the Supreme Court has told us there are five votes to change the standard. Yes. Okay, I appreciate your candor. Thank you. And so, Your Honors, I think that based on what the court did here, based on the evidence that the court had before it, to simply find by a preponderance of the evidence that this defendant is the same person as the Michael McDowell who was convicted of second-degree assault in New York in the early 70s, the court did what any court would do, finding that this information was sufficient. So we ask that you affirm the judgment of the district court. Thank you very much. Thank you. Mr. Waters, do you have any rebuttal? Yes, Your Honor. Your Honors, Appellant acknowledges that if we did have direct evidence from the FBI agent, for example, or elsewhere, that there was a one-to-one fingerprint match of Ernest James McDowell, Jr. in 2006 or 2010 in this case, and Michael McDowell from 1971, that would certainly be evidence that sufficient to show by a preponderance that Ernest James McDowell committed the crime, charged Michael McDowell in 1971. The point is we don't have that direct evidence. We have a hearsay statement that Appellant, at least, believes is essentially the FBI saying NCIC uses fingerprints. We also have the probation officer acknowledging a couple pages later in the transcript that if Mr. McDowell had given a false name to an arresting officer, that would go into the NCIC and be stored in the criminal history as an alias. We know from the McCollum case from the Supreme Court, if somebody else had given a false name relating to Ernest James McDowell, that could have ended up in Ernest James McDowell's criminal history and ended up in the NCIC. Again, the NCIC draws from a great many different sources, some of which are probably reliable, some of which aren't, some of which, on the face of this record, are clearly false. We know the birthdates are wrong. We know the names are wrong. We know at least one of the Social Security numbers has to be wrong. Basically, we're not saying that a court can't consider an NCIC record. And certainly in the majority of cases, if there's not an objection to the PSR, the NCIC record is sufficient. What we're saying, along with the first court. I have this. It seems to me that if we adopt your argument, we're setting out a precedent where people should lie and, indeed, should lie, come up with a different story every time they come in because that is going to make for confusion in the NCIC report. Give a different name, a different birthdate. They can't change their fingerprints, presumably, although, you know, you look at the movies and maybe you can. But that should be the operating order, and if you do that, then there's not going to be sufficient evidence. Your Honor, I think that ship may have sailed as far as most of the defendants are concerned. They often do give aliases. What I'm pointing out is that ultimately proves the point that, absent other evidence as to the reliability of the NCIC record, it shouldn't be presumed to be reliable. The court should rely on evidence for which there is indicia of reliability, and in the majority of cases, I believe that evidence will be present. This is, I think, an outlier case because of the age of the conviction. You just told me that most of them give aliases. So you're not saying if we would go your way, it isn't an outlier? It's an outlier in that the PSR contains aliases, Your Honor. In my experience, almost all of them contain aliases. It's an outlier in that there isn't other evidence available. There isn't a certified court judge. They usually get the name right before they finish, complete the arrest and everything, and then the alias simply shows up on the NCIC as an alias, and the real name shows up as it should be. Often, Your Honor, and I would point out that in this NCIC record, it doesn't have his real name. There's Michael McDowell, Ernst McDowell, Michael McDowell, and James McDowell. The defendant's, the appellant's actual name doesn't appear on this NCIC record at all. I thought I heard you say at the end there that this is an outlier because we don't have the actual record of conviction. So is this the kind of evidence that often appears as a substitute in these cases in your experience? In my experience, the NCIC record would be the first probable source of PSR criminal history. It's the easiest to access. It's the broadest. If there's a challenge to that, then the probation officer or the court could go to more, less immediately available but more reliable evidence. It's not only more reliable, it shows the disposition. Usually, a lot of these NCI records, these rap sheets, don't show the disposition. They're arrest records. Yes, Your Honor. Right. Somebody was arrested but no grand jury didn't indict, charge dismissed, all that stuff. Then lots of times it doesn't show up on them. Yes, Your Honor. So if we want to go to the courthouse to find out what happened to the case. And that's why this is an outlier. You can't do that, but most cases you can. I see I'm out of time. I ask the court to vacate the judgment and remand for reset. Thank you very much.
judges: Diana Gribbon Motz, Robert B. King, Albert Diaz